**UNITED STATES DISTRICT COURT**
**MIDDLE DISTRICT OF PENNSYLVANIA**

| | |
|---|---|
| **BEN MROZ, III.,** | :   **CIVIL ACTION NO. 3:23-CV-849** |
| **Plaintiff,** | : |
| **v.** | :          **(JUDGE MANNION)** |
| **WORKFORCE SOFTWARE, LLC,** | : |
| **Defendant.** | : |

## MEMORANDUM

Presently before the court is Defendant's motion for summary judgment. (Doc. 18.) Plaintiff alleges that Defendant, his former employer, *inter alia* discriminated against him based on his sex and religion in violation of Title VII of the Civil Rights Act of 1964. On the other hand, Defendant claims that Plaintiff was in fact terminated for working a second job on Defendant's time. The only arguments to the contrary are based on mischaracterizations of the record and Plaintiff's own deposition testimony, which even when accepted as true would not allow a reasonable jury to find in Plaintiff's favor. Accordingly, Defendant's motion will be **GRANTED**.

## I.    Background

Plaintiff worked as a Senior Consultant at Defendant from April 11, 2022, until December 8, 2022. As a condition of his employment with

Defendant, Plaintiff singed an Employment Agreement, in part acknowledging: "I understand this job is a full time position, and I will not maintain any other employment or business activities that will interfere with my job or that is in competition with the Company's market space." On December 6, 2022, Plaintiff was seen by one of Defendant's most important clients delivering packages for the U.S. Postal Service while in a videoconference with that client.

On December 8, 2022, Defendant terminated Plaintiff. According to Defendant, Plaintiff was terminated for the December 6th videoconference incident, which constituted a violation of his Employment Agreement and breach of Defendant's trust. However, Plaintiff alleges that he was actually terminated in retaliation for complaining about a hostile work environment created not by his direct supervisor, Tom Trombley, but his project manager, Tracy LaDuc. Specifically, Plaintiff, who is both gay and Christian, claims that LaDuc on one occasion before learning Plaintiff's sexual orientation referred to something she did not like as "gay" in front of him. After learning Plaintiff's sexual orientation LaDuc then questioned him about how he could practice a religion that "prosecutes" him. Plaintiff does not dispute that he was delivering mail during the December 6th videoconference but claims that he

was only "volunteering" for the Postal Service and was not a paid contractor or employee.

On February 1, 2023, Plaintiff filed an EEOC charge against Defendant and subsequently received a right to sue letter. On May 23, 2023, Plaintiff initiated this lawsuit by filing a complaint that alleges a hostile work environment, discrimination, and retaliation based on sex and religion under Title VII. Defendant answered Plaintiff's complaint and engaged in discovery prior to filing the present motion.

## II.    Legal Standard

Summary judgment is appropriate "if the pleadings, the discovery [including, depositions, answers to interrogatories, and admissions on file] and disclosure materials on file, and any affidavits show that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c); *See also Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Turner v. Schering–Plough Corp.*, 901 F.2d 335, 340 (3d Cir. 1990). A factual dispute is genuine if a reasonable jury could find for the nonmoving party and is material if it will affect the outcome of the trial under governing substantive law. *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986); *Aetna Cas. & Sur. Co. v. Ericksen*, 903 F. Supp. 836, 838 (M.D. Pa. 1995).

At the summary judgment stage, "the judge's function is not himself to weigh the evidence and determine the truth of the matter but to determine whether there is a genuine issue for trial." *Anderson*, 477 U.S. at 249; *See also Marino v. Indus. Crating Co.*, 358 F.3d 241, 247 (3d Cir. 2004) (A court may not weigh the evidence or make credibility determinations.) The court must consider all evidence and inferences drawn therefrom in the light most favorable to the nonmoving party. *See Andreoli v. Gates*, 482 F.3d 641, 647 (3d Cir. 2007). Where the nonmoving party's evidence contradicts the movant's, then the non-movant's must be taken as true. *Big Apple BMW, Inc. v. BMW of N. Am., Inc.*, 974 F.2d 1358, 1363 (3d Cir. 1992) (citing *Country Floors, Inc. v. P'ship Composed of Gepner & Ford*, 930 F.2d 1056, 1061 (3d Cir. 1991). But a non-movant "may not prevail merely by discrediting the credibility of the movant's evidence; it must produce some affirmative evidence." *Anderson,* 477 U.S. at 256–57.

To prevail on summary judgment, the moving party must affirmatively identify those portions of the record which demonstrate the absence of a genuine issue of material fact. *Celotex*, 477 U.S. at 323–24. The moving party can discharge this burden by showing that "on all the essential

elements of its case on which it bears the burden of proof at trial, no reasonable jury could find for the nonmoving party." *In re Bressman*, 327 F.3d 229, 238 (3d Cir. 2003); *See also Celotex*, 477 U.S. at 325. If the moving party meets this initial burden, the nonmoving party "must do more than simply show that there is some metaphysical doubt as to material facts," but must show sufficient evidence to support a jury verdict in its favor. *Boyle v. County of Allegheny*, 139 F.3d 386, 393 (3d Cir. 1998) (quoting *Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 586 (1986)).

The nonmoving party must direct the court's attention to specific, triable facts by "citing particular parts of materials in the record." Fed. R. Civ. P. 56(c)(1)(A); *See United States v. Starnes*, 583 F.3d 196, 216 (3d Cir. 2009) ("Judges are not like pigs, hunting for truffles buried in briefs.") (Quoting *United States v. Dunkel*, 927 F.2d 955, 956 (7th Cir. 1991)); *See also DeShields v. Int'l Resort Properties Ltd*., 463 F. App'x 117, 120 (3d Cir. 2012) ("If factual support for [a plaintiff's] claim exist[s] in the record, it [i]s incumbent upon her to direct the District Court's attention to those facts.")

If the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to [the non-movant's] case, and on which [the non-movant] will bear the burden of proof at trial," Rule 56 mandates the entry of summary judgment because such a failure

"necessarily renders all other facts immaterial." *Celotex*, 477 U.S. at 322–23; *Jakimas v. Hoffman–La Roche, Inc.*, 485 F.3d 770, 777 (3d Cir. 2007).

III.   **Discussion**

Defendant argues it is entitled to summary judgment on Plaintiff's hostile work environment claim because even accepting Plaintiff's allegations as true the alleged harassment was insufficiently severe or pervasive to give rise to such a claim. Likewise, Defendant argues it is entitled to summary judgment on Plaintiff's discrimination and retaliation claims because the decisionmakers involved in Plaintiff's termination were unaware of his sexual orientation and religion, and even if they were aware Plaintiff cannot rebut Defendant's legitimate non-discriminatory reason for terminating him. The court will address each of these arguments in turn.

**A. Hostile Work Environment**

To prevail on a hostile work environment claim under Title VII, a plaintiff must demonstrate "(1) she suffered intentional discrimination because of her sex [or religion], (2) the discrimination was pervasive and regular, (3) the discrimination detrimentally affected her, (4) the discrimination would detrimentally affect a reasonable person of the same sex [or religion] in that position, and (5) the existence of respondeat superior liability." *Martinez v.*

*Rapidigm*, Inc., 290 F. App'x 521, 524 (3d Cir. 2008). "The statute prohibits severe or pervasive harassment; it does not mandate a happy workplace. Occasional insults, teasing, or episodic instances of ridicule are not enough; they do not 'permeate' the workplace and change the very nature of the plaintiff's employment." *Jensen v. Potter*, 435 F.3d 444, 449 (3d Cir. 2006), *overruled in part on other grounds by Burlington N. & Santa Fe Ry. Co. v. White*, 548 U.S. 53 (2006)). Factors to be weighed include "the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance." *Id*. No one factor is dispositive, and the analysis must focus on the "totality of the circumstances." *Id*.

### 1. Sex

Title VII prohibits employers from creating a hostile work environment based on an employee's sex, sexual orientation, and gender non-conformance. *Doe v. Triangle Doughnuts, LLC,* 472 Supp. 3d 115, 129-30 (E.D. Pa. 2020) (citing *Bostock v. Clayton Cnty., Georgia*, 590 U.S. 644, 655, (2020)). However, in Title VII cases involving a personal attribute not obvious to an employer, the Plaintiff must establish that the employer knew about the particular attribute prior to the alleged discriminatory behavior. *See Geraci v.*

*Moody–Tottrup, Intern., Inc.*, 82 F.3d 578, 581 (3d Cir. 1996). Here Plaintiff alleges that LaDuc referred to a piece of artwork she did not like as "gay" during an October 2022 work trip to British Columbia but concedes that LaDuc was unaware of his sexual orientation at the time she made this comment. Thus, insofar as his hostile work environment claim is based on sex, Plaintiff does not submit evidence of intentional discrimination.

Regardless of intentionality one isolated comment is not sufficiently severe to demonstrate the pervasive atmosphere of harassment required to prove a Title VII violation. *See King v. City of Philadelphia*, 66 F. App'x 300, 305 (3d Cir. 2003) (Finding that Plaintiff suffering a single racial epithet on one occasion, getting physically pushed on another occasion, and being threated with sabotage of his work record on yet another occasion did not demonstrate severe and pervasive harassment under Title VII.) *See also Faragher v. City of Boca Raton,* 524 U.S. 775, 788, 118 S.Ct. 2275, 141 L.Ed.2d 662 (1998) (Cautioning that "isolated incidents (unless extremely serious) will not amount to discriminatory changes in the terms and conditions of employment.") Thus, LaDuc's singular comment does not rise to the level of severity and pervasiveness necessary to establish a hostile work environment based on sex under Title VII.

Plaintiff claims that after LaDuc made the allegedly discriminatory comment, he told her that he is gay and was offended by her remarks. He further claims that LaDuc, who already knew Plaintiff regularly attended church, responded by questioning how Plaintiff could be both gay and agree with religion, which made Plaintiff more uncomfortable and led him to complain about LaDuc to Trombley, his direct supervisor. After complaining to Trombley, Plaintiff claims that LaDuc treated him differently and worse than before. According to Plaintiff this hostility escalated throughout the remainder of his employment by Defendant to include significant scrutiny, harsh language, and the stripping of job duties causing him severe anxiety, which when brought to Trombley's attention was dismissed.

Aside from Plaintiff's deposition these allegations do not appear in the record.[1] On this basis alone the court could enter summary judgment. *See Irving v. Chester Water Auth.*, 439 Fed. App'x. 125, 127 (3d Cir. 2011) ("Self-serving deposition testimony is insufficient to raise a genuine issue of material fact.") But assuming Plaintiff's additional allegations are true, they still do not establish a hostile work environment. These allegations do not

---

[1] Plaintiff also does not directly cite to the record but instead cites to his statement of facts, which in turn cites to the record. The court reminds Plaintiff that "Judges are not like pigs, hunting for truffles buried in briefs" and that it is incumbent upon the parties to cite to the record in making their case. *See Starnes*, 583 F.3d at 216 (3d Cir. 2009).

indicate any physical threat or humiliation, or unreasonable interference with Plaintiff's work performance. Courts have found far more severe allegations do not establish a hostile work environment under Title VII. *See e.g., King,* 66 F. App'x 300 (3d Cir. 2003) (Plaintiff who was physically pushed and threatened with sabotage of his employment record could not establish a hostile work environment.) *See also Nitkin v. Main Line Health*, 67 F.4th 565, 570 (3d Cir. 2023) (Finding that Plaintiff who alleged "at least twenty-one" sexually harassing comments over the course of three and half years including five comments with specific details did not establish a hostile work environment based on sex.) Accordingly, a reasonable jury could not find Plaintiff was subject to a hostile work environment based on sex.

## 2. Religion

Hostile work environment claims based on religion are also cognizable under Title VII.  *See Abramson v. William Paterson Coll. of New Jersey*, 260 F.3d 265, 277 n.5 (3d Cir.  2001) ("[W]e apply the well-established framework for hostile work environment claims with respect to other protected categories [*i.e.,* sex, race, national origin] to our analysis of a hostile work environment claim made on account of religion.") However, here Plaintiff also fails to establish that LaDuc's alleged comments were sufficiently severe or pervasive to establish a hostile work environment based on religion.

According to Plaintiff's own deposition testimony LaDuc made her allegedly discriminatory comments questioning the compatibility of Plaintiff's sexual orientation and religion while on a two-week work trip to British Columbia in October 2022, after which her alleged discriminatory statements stopped. Such allegations over this limited period do not give rise to a hostile work environment claim. *See Bacone v. Philadelphia Hous. Auth.*, 112 F. App'x 127, 129 (3d Cir. 2004) ("The behavior at issue involved no more than four incidents during the span of two weeks, and though they were offensive, they are not pervasive enough to rise to the level of a Title VII violation.") Similarly, since the same framework applies to sex and religion based claims the vague allegations of significant scrutiny, harsh language, and stripping of job duties made by Plaintiff also do not establish a hostile work environment based on religion. *See Quiroga v. Hasbro, Inc.,* 934 F.2d 497, 500 (3d Cir. 1991). (The non-movant "may not rest upon mere allegations, general denials, or . . . vague statements.") Accordingly, a reasonable jury could not find Plaintiff was subject to a hostile work environment based on religion.

## B. Discrimination

Plaintiff claims that he was discriminated against because Defendant terminated him based on his sex and religion.

### 1. Plaintiff's Prima Facia Case

To establish a *prima facie* case of employment discrimination under Title VII, a plaintiff must make out the following: (1) that he is a member of a protected class; (2) that he is qualified for the position; (3) that he suffered an adverse employment action; and (4) that he suffered such action under circumstances giving rise to an inference of discrimination. *Sarullo v. United States Postal Servs*., 352 F.3d 789, 797 (3d Cir. 2003). The focus in determining whether a *prima facie* case exists is "always whether the employer is treating some people less favorably than others because of their race, color, religion, sex, or national origin." *Id*. Title VII's protection against sex discrimination also extends to an individual's sexual orientation. *See Bostock*, 140 S.Ct. 1731 (2020) (Holding that discrimination against an employee based on their sexual orientation is *per se* "sex" discrimination under Title VII). However, "courts have regularly held that the plaintiff cannot make out a *prima facie* case of discrimination unless he or she proves that the employer knew about the plaintiff's particular personal characteristic." *Boykins v. SEPTA*, 722 F. App'x 148, 156 (3d Cir. 2018) (quoting *Geraci*, 82 F.3d at 581 (3d Cir. 1996)).

Here Defendant argues that the decisionmakers involved in Plaintiff's termination were unaware of his sexual orientation and religion. At the time

of his deposition Plaintiff testified that he did not know who decided to terminate him but that LaDuc, Trombley, and Carol Duman, the Human Resources Business Partner responsible for Plaintiff's department, all knew about his sexual orientation and religion prior to his termination. However, the record shows that none of these individuals made the decision to terminate him. Instead, the record indicates that Mark Kurowski, Defendant's Vice President of North American Services, and Hope Bartgis, Defendant's Vice President of Global Services made the decision to terminate Plaintiff.

Plaintiff argues that because LaDuc met with Kurowski before he terminated Plaintiff, LaDuc is the "true decision-maker" with Kurowski merely "rubber-stamping his approval." However, there is no evidence in the record to support this argument. In fact, there is evidence LaDuc defended Plaintiff over the December 6th videoconference incident. She argued that a verbal warning was sufficient punishment, but Kurowski insisted on terminating Plaintiff for breach of his employment agreement and their trust. Plaintiff also argues that record shows Kurowski knew about his complaints of alleged discrimination by LaDuc prior to making the decision to terminate him.[2] But

_____

[2] In making this argument Plaintiff again does not cite to the record but instead only cites to his statement of facts. Moreover, in the cited portion of his statement of facts Plaintiff cites to the "Kurowski Dep." without any reference to the exhibit number associated with the transcript for that

*(footnote continued on next page)*

upon its review of the record the court sees no such evidence. In the cited portion of Kurowski's deposition transcript he does testify that he spoke with LaDuc after the December 6th videoconference incident and before Plaintiff was terminated on December 8, 2022. Yet, contrary to Plaintiff's assertions Kurowski did not testify that LaDuc told him about complaints of discrimination allegedly lodged against her by Plaintiff. Thus, Plaintiff misrepresents the record and fails to establish a *prima facia* case of discrimination.

### 2. Defendant's Legitimate Non-Discriminatory Reason for Terminating Plaintiff

Even if Plaintiff did establish a *prima facie* case of discrimination, the burden would have then shifted to Defendant to advance a legitimate, non-discriminatory reason for its conduct. Where a Defendant carries this burden "the plaintiff must be able to convince the factfinder both that the employer's proffered explanation was false, and that discrimination was the real reason for the adverse employment action." *See Heiken v. Sw. Energy*, No. 3:18-CV-693, 2021 WL 1082235, at *6 (M.D. Pa. Jan. 29, 2021), *report and recommendation adopted,* No. CV 3:18-693, 2021 WL 1060093 (M.D. Pa.

---

deposition. This is not an adequate citation to the record and the court could have disregarded Plaintiff's assertions based on such citations.

Mar. 18, 2021). ("Title VII claims are subject to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).")

Here Plaintiff has proffered a legitimate non-discriminatory reason for its conduct, namely that it terminated Plaintiff for visibly doing another job while in a videoconference with an important client. In support of this argument Defendant further proofers evidence that (1.) similarly situated heterosexual employees including Plaintiff's supervisor Trombley were also terminated for getting caught doing a second job in violation of their employment agreements, (2.) at least one of the employees who replaced Plaintiff is also gay, and (3.) the decision makers involved in Plaintiff's termination are Christians. Plaintiff responds that he was still terminated under circumstances that give rise to the inference of discrimination, namely that he was terminated only two days after he allegedly complained about LaDuc's sex and religious discrimination to Defendant's human resources department.

Plaintiff argues that neither LaDuc nor Trombley forwarded his complaints of LaDuc's discrimination during the October 2022 business trip to the human resources department in violation of Defendant's policy. As a result, he directly complained to the human resources department when he met with Carol Duman about the December 6th videoconference incident and

only two days later, he was terminated. According to Plaintiff this narrow temporal proximity between his most recent complaint and termination creates an undeniable inference of discrimination. As such Plaintiff takes the position that the December 6th videoconference incident was merely pretext for his termination.

A plaintiff may prove pretext by submitting evidence sufficient for a factfinder to "either (1) disbelieve the employer's articulated legitimate reason; or (2) believe that an invidious discriminatory reason was more likely than not a motivating or determinative cause of the employer's action." *Keller v. Orix Credit Alliance, Inc.*, 130 F.3d 1101, 1108-09 (3d Cir. 1997) (quoting *Fuentes v. Perskie*, 32 F.3d 759, 763 (3d Cir. 1994)). A plaintiff can establish pretext by illustrating that the defendant's proffered reasons for the adverse employment action are contradicted or inconsistent. *Zelinski v. Pennsylvania State Police*, 108 Fed. App'x. 700, 707 (3d Cir. 2004). To discredit an employer's proffered reason a plaintiff must demonstrate such "weaknesses, implausibilities, inconsistencies, incoherencies, or contradictions" in the proffered reason for its action that a reasonable factfinder could rationally find them unworthy of credence. *Fuentes* 32 F.3d at 765 (3d. Cir. 1994)).

Plaintiff argues that the record shows clear inconsistencies in Defendant's purported rationale for terminating him. Specifically, Plaintiff

asserts that Defendant initially terminated him from breaching management's trust but now claims it terminated him for breaching his employment agreement's conflict of interest policy. In either event the ultimate reason for both breaches was the December 6th videoconference incident, which Plaintiff does not dispute happened. Plaintiff does dispute that the December 6th videoconference incident caused a conflict of interest because he never worked for a competitor of Defendant contemporaneous with his employment by Defendant. Instead, he claims to have been merely "volunteering" for the Postal Service a non-competitor of Defendant.

However, in his employment agreement Plaintiff agreed not to maintain any other employment or business activity that would interfere with his job and Plaintiff's actions on December 6th videoconference did interfere with his job by causing an embarrassing disruption during a meeting with an important client.  Thus, even if Plaintiff was merely "volunteering" for a non-competitor of Defendant, he still reasonably violated management's trust and his employment agreement by doing so in front of an important client and in turn fails to establish pretext.

Plaintiff has neither established a *prima facie* case of discrimination nor rebutted Defendant's legitimate non-discriminatory reason for terminating

him. Accordingly, a reasonable jury could not find Plaintiff was discriminated against by Defendant.

### C. Retaliation

Plaintiff also claims that his termination was in retaliation for his complaints about LaDuc's alleged sex and religious discrimination. "To establish a *prima facie* case of retaliation, a plaintiff must show: (1) protected employee activity; (2) adverse action by the employer either after or contemporaneous with the employee's protected activity; and (3) a causal connection between the employee's protected activity and the employer's adverse action." *Krouse v. American Sterilizer Co.*, 126 F.3d 494, 500 (3d Cir. 1997). A plaintiff can establish causation by showing 1.) temporal proximity between the protected activity and adverse action, 2.) a pattern of antagonism after the protected act or 3.) the record taken as a whole supports an inference of retaliation. *Farrell v. Planters Lifesavers Co.,* 206 F.3d 271, 280 (3d Cir. 2000) (*Kachmar v. SunGard Data Systems, Inc.,* 109 F.3d 173, 177 (3d Cir. 1997).

Similar to discrimination cases if Plaintiff establishes a *prima facia* case of retaliation, the burden shifts to Defendant to advance a legitimate, non-retaliatory reason for its conduct, and if Defendant does so "the plaintiff must be able to convince the factfinder both that the employer's proffered

explanation was false, and that discrimination was the real reason for the adverse employment action." *See Heiken*, No. 3:18-CV-693, 2021 WL 1082235, at *6 (M.D. Pa. Jan. 29, 2021), *report and recommendation adopted,* No. CV 3:18-693, 2021 WL 1060093 (M.D. Pa. Mar. 18, 2021). ("Title VII claims are subject to the burden-shifting framework established in *McDonnell Douglas Corp. v. Green*, 411 U.S. 792 (1973).")

Here Plaintiff claims he engaged in protected activity by making multiple verbal complaints of sex and religious discrimination to his project manager, LaDuc, his direct supervisor, Trombley, and Defendant's human resources department through Duman. According to Plaintiff the last of these complaints occurred on December 6, 2022, only two days prior to his termination. Plaintiff further claims that Kurowski was aware of these complaints when he made the decision to terminate him. However, as previously stated Plaintiff misrepresents the portion of the record he claims evidences Kurowski's knowledge of Plaintiff's alleged complaints. Moreover, as also previously stated Defendant has advanced the December 6th videoconference incident as a legitimate non-retaliatory reason for terminating Plaintiff on December 8, 2022.   Accordingly, Plaintiff fails to establish a *prima facia* case of retaliation or carry its burden under the

*McDonnell-Douglas* framework, and a reasonable jury could not find that he was retaliated against by Defendant.


### IV.    Conclusion

Based on the aforesaid the court will **GRANT** Defendant's motion for summary judgment. An appropriate order follows.


                              *s/ Malachy E. Mannion*
                              **MALACHY E. MANNION**
                              **United States District Judge**

**DATE: April 29, 2024**
23-849-01